***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments before the Full Commission. The appealing parties have shown good ground to reconsider the evidence. Upon reconsideration the Full Commission modifies in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employer-employee relationship existed between plaintiff and defendant-employer.
3. At all relevant times, defendant-employer was insured for injuries sustained under the Workers' Compensation Act by AIG Insurance Company and the claim was serviced by Gallagher Bassett, Inc.
4. Plaintiff has been paid compensation for total disability at a rate of $221.51 per week for all periods of disability.
5. The parties stipulated into evidence the following:
 a. Stipulated Exhibit No. 1, Pre-Trial Agreement, as amended and initialed by the parties.
 b. Stipulated Exhibit No. 2, medical records.
 c. Stipulated Exhibit No. 3, Industrial Commission forms.
 d. Stipulated Exhibit No. 4, medical rehabilitation reports.
6. The issues before the Commission are:
 a. Is plaintiff permanently and totally disabled;
 b. Are defendants required to pay plaintiff at the average weekly wage stated in their original Form 60;
 c. If so, is plaintiff entitled to penalties and attorney's fees for defendants' unilateral reduction of her compensation; and
 d. Is plaintiff entitled to attorney's fees for defendants' unreasonable defense of this claim. *Page 3 
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was a 59-year-old former employee of defendant-employer, a textile cleaning and folding company that is no longer in business. She had worked there, performing essentially the same folding and packing job, since 1972.
2. On August 14, 2003, plaintiff sustained an injury to her right shoulder arising out of and in the course of her employment with defendant-employer.
3. Defendants accepted the claim as compensable by Form 60 filed on October 23, 2003.
4. Plaintiff was treated by Dr. Jonathan Paul, who performed a right shoulder arthroscopic rotator cuff repair on October 2, 2003. After this surgery was unsuccessful, Dr. Paul performed a right shoulder arthroscopy with lysis of adhesions, capsular releases, arthroscopic biceps tenotomy and arthroscopic subacromial adhesion resection on March 2, 2004.
5. Plaintiff was then referred to Dr. Brian DeLay, who performed a third surgery on September 28, 2004. This surgery was a right shoulder arthroscopic pan capsular release with manipulation under general anesthesia, a revision of the subacromial decompression and a partial coracoid resection. Dr. DeLay noted "severe scarring anteriorly" in the glenohumeral joint of the shoulder. *Page 4 
6. Despite therapy and cortisone injections, plaintiff continued to have significant problems. On June 28, 2005, Dr. DeLay performed a fourth surgery, a right shoulder arthroscopy with arthroscopic lysis of adhesions. Plaintiff was noted to have cartilage loss of the humeral head and fibrillation of the glenoid articular cartilage. "Extensive" scar tissue was debrided and a 10mm loose body was found scarred into the anterolateral acromion.
7. Plaintiff was then referred to and seen by Dr. Jerry L. Barron on February 28, 2006. Dr. Barron performed a fifth surgery on plaintiff's right shoulder on April 4, 2006. That procedure was an arthroscopic revision of the subacromial decompression, debridement of the glenohumeral joint and the labrum, lysis of subdeltoid adhesions and an autologous cell tissue graft in the subacromial space of the glenohumeral joint. Dr. Barron found that plaintiff's significant glenohumeral arthrosis, caused by the injury and multiple surgeries, could be the primary factor for most of her pain.
8. On June 27, 2006, Dr. Barron released plaintiff at maximum medical improvement, with a 35% permanent partial disability to her right shoulder and with permanent restrictions. Dr. Barron stated that there was a good chance that plaintiff would require eventual total shoulder replacement.
9. Dr. Barron sent plaintiff for a functional capacity evaluation, which indicated that she would be able to perform only sedentary work. Based upon his evaluations of plaintiff and the results of the FCE, Dr. Barron limited plaintiff permanently from any overhead work, repetitive movement of the right arm or lifting more than five pounds. In his opinion plaintiff could not return to the job she was doing at the time of injury.
10. Vocational expert Leanna Hollenbeck evaluated plaintiff and determined that plaintiff's spelling ability was at a first grade level and her word pronunciation was at a third *Page 5 
grade level. Her IQ was measured at 78, which is "borderline," or significantly lower than average. Plaintiff graduated from high school, but was always in special education classes. Based on her age, restrictions, education, and lack of transferable skills, it was Ms. Hollenbeck's opinion that plaintiff is unemployable now or in the future. This opinion was uncontradicted and the Commission finds it to be credible. It would be futile for plaintiff to attempt any job search at this time and therefore, plaintiff is disabled from any employment.
11. Although plaintiff does not want further surgery, Dr. Barron believes that shoulder replacement surgery would probably improve plaintiff's condition and he stated that the procedure has an 80% success rate for relief of pain. Dr. Barron also felt that plaintiff would likely be employable if she had successful shoulder replacement surgery. Ms. Hollenback believed that if plaintiff's pain decreased, it was "worth a try" for plaintiff to return to work and that plaintiff's employment possibilities would broaden. Because plaintiff is in need of further medical treatment, including recommended surgery which may increase her employability, the Full Commission finds that at this time it would be premature to find that plaintiff is permanently and totally disabled from any employment.
12. Plaintiff argued to the Commission that defendants are bound by the average weekly wage shown on the Form 60 initially filed with the Industrial Commission on October 23, 2003. On the form, defendants listed plaintiff's average weekly wage as $400.00 and her compensation rate as $266.66. Several months later, on December 31, 2003, defendants filed a "corrected" Form 60 dated December 17, 2003 with the Industrial Commission. This Form 60 was submitted to correct the average weekly wage by reducing it to $316.21, thereby reducing the compensation rate to $210.81. Plaintiff argues that she did not consent to this change and that defendants did not apply to the Commission for permission to allow this change. Plaintiff *Page 6 
was paid this lower rate of compensation until late in 2007. Defendants modified plaintiff's compensable rate to $221.51 by filing a Form 62, dated October 29, 2007. Plaintiff has been paid this rate of compensation since that time and was paid for previous underpayments based on this modified compensation rate. Plaintiff testified that the reduced rate of compensation from December 17, 2003 until October 29, 2007 caused her financial hardship, including difficulty paying her monthly bills.
13. Defendants responded to plaintiff's argument that they followed the statutory procedures regarding the modification of the average weekly wage by filing an amended Form 60 and Form 62. The Full Commission finds that defendants complied with the statute and properly filed an amended Form 60 and Form 62. Defendants were not bound by the average weekly wage shown on the initial Form 60.
14. Defendants did not defend this matter without reasonable grounds.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 18, 2003, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer, resulting in an injury to her right shoulder. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted the compensability of plaintiff's injury by accident on April 18, 2003 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277,disc. review denied, *Page 7 353 N.C. 729, 550 S.E.2d 782 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury.Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259,545 S.E.2d 485 (2001); Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
4. In the instant case, plaintiff met her initial burden to show that she is disabled. Plaintiff is capable of some work, but she has shown that it would be futile because of preexisting conditions,i.e., her age, IQ limitation, lack of transferable skills, and lack of education, to seek other employment.
5. Defendants have not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical, mental and *Page 8 
vocational limitations. Demery v. Perdue Farms, Inc., supra.
6. As a direct and proximate result of plaintiff's injury by accident on April 18, 2003, and her resulting medical condition to her right shoulder, plaintiff was disabled from any employment from October 2, 2003 to the present and continuing. Therefore, plaintiff is entitled to payment by defendants of total disability compensation at the rate of $221.51 from October 2, 2003 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to have defendants provide all medical treatment necessitated by her April 18, 2003 compensable injury to her right shoulder. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
8. N.C. Gen. Stat. § 97-18(b) provides the procedures for filing a Form 60 and/or a Form 62. The filing of a Form 60 and/or a Form 62 does not require that the insurer seek prior approval of the Commission and does not require the consent of the employee. N.C. Gen. Stat. § 97-18(b) reads in pertinent part:
 Upon paying the first installment of compensation and upon suspending, reinstating, changing, or modifying such compensation for any cause, the insurer shall immediately notify the Commission, on a form prescribed by the Commission, that compensation has begun, or has been suspended, reinstated, changed, or modified. A copy of each notice shall be provided to the employee.
9. Therefore, the statute mandates that the insurer notify the Commission and the employee of any changes on a form prescribed by the Commission. Defendants' filing of the two Forms 60 and the Form 62 in this case complied with the procedures set forth in N.C. Gen. Stat. § 97-18(b). Accordingly, defendants were not bound by the average weekly wage and compensation rate set forth on their initial Form 60 filed on October 23, 2003 and followed the correct procedure to amend the Form 60 by filing an amended Form 60 and a Form 62. *Page 9 
10. Defendants did not defend this claim without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff total disability compensation at the rate of $221.51 from October 2, 2003 and continuing until further Order of the Commission. As stipulated by the parties, plaintiff has been paid compensation for total disability at a rate of $221.51 for all periods of disability, to the present. Therefore, no compensation benefits amounts have accrued.
2. Defendants shall pay all medical expenses incurred or to be incurred, as a result of plaintiff's compensable injury by accident on April 18, 2003, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability.
3. A reasonable attorney's fee of 25% of the ongoing compensation awarded plaintiff in paragraph 1 of this Award is approved for plaintiff's counsel. Plaintiff's counsel shall receive every fourth check of all future compensation.
4. Plaintiff's claims that defendants are required to pay plaintiff at the average weekly wage stated in the original Form 60, and that plaintiff is entitled to penalties and attorney's fees for defendants' unilateral reduction of her compensation, are DENIED.
5. Defendants shall pay the costs. *Page 10 
This ___ day of September, 2009.
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ STACI T. MEYER COMMISSIONER
S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1